# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Tyreese M. McKay,                                    Case No. 23-cv-00997 (PJS/DJF)

                        Plaintiff,

        vs.                                          **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Hennepin County; Sheriff's Deputy Jason
Wong, Sheriff's Deputy Daniel Koski, and
Sheriff's Deputy Reed Hendrickson, in
their individual and official capacities,

                        Defendants.

## INTRODUCTION

On July 8, 2021, Plaintiff was pulled over and arrested for felony drug possession and obstructing the legal process. During that traffic stop, Plaintiff immediately exited his vehicle, took an aggressive posture, and defied Deputy Jason Wong's repeated orders to return inside his vehicle. Plaintiff continued to ignore Wong's verbal commands and he physically resisted Wong's attempts to handcuff Plaintiff for officer safety. Due to Plaintiff's escalating behavior and physical resistance, Wong took Plaintiff to the ground. Once on the ground, Plaintiff continued to defy commands to place his hands behind his back and physically resisted multiple deputies until he was finally handcuffed. Plaintiff now claims that Deputies Jason Wong, Daniel Koski and Reed Hendrickson (collectively, "Defendant Deputies") unlawfully arrested him and used excessive force. Plaintiff alleges reputational harm, lost wages, scrapes to his face and left wrist, and a fractured ankle.

Plaintiff's claims are blatantly contradicted by body-worn camera footage of the incident, which shows that Defendant Deputies' limited use of force was reasonable and in response to Plaintiff's physical resistance. The footage also shows Plaintiff walking on his ankle without complaint immediately after the incident. Defendants are entitled to dismissal under Rule 12.

## ALLEGATIONS AND MATERIALS EMBRACED BY THE COMPLAINT

Plaintiff alleges that on July 8, 2021, he was working for the MAD DADS organization by the Salvation Army shelter in Minneapolis. (Compl., ¶ 7.) Plaintiff was wearing a green MAD DADS shirt. (*Id.*) Plaintiff claims that he observed a Hennepin County Sheriff's Deputy squad car patrolling the area throughout his shift. (*Id*. at ¶ 8.)

When Plaintiff finished work, he drove away from the shelter with a passenger client to whom Plaintiff alleges that he had agreed to provide a ride. (*Id.* at ¶ 9.) Plaintiff then claims that he observed the same squad car he had seen during his shift pull behind him and activate its emergency lights. (*Id.* at ¶ 10.) Plaintiff alleges that he pulled into to the next lane to allow the squad to pass him. (*Id.* at ¶ 11.) The squad then moved in behind Plaintiff, Plaintiff realized he was being pulled over, and Plaintiff immediately pulled over and stopped. (*Id.* at ¶ 12.)

Plaintiff alleges that he then exited his vehicle "to speak to the Deputies." (*Id.* at ¶ 13.) Plaintiff claims that he was knocked to the ground by a deputy while he was attempting to comply with instructions to get back in his vehicle. (*Id.* at ¶ 14.) Plaintiff claims that multiple deputies then arrived, with one jumping on Plaintiff's back and another on Plaintiff's leg. (*Id.* at ¶ 15.) Plaintiff alleges that he suffered injuries from this

encounter, specifically a fractured ankle, cuts and scrapes to his face, and cuts to his left wrist from the handcuffs. (Compl., ¶¶ 16-17.)

Plaintiff's actions and Defendant Deputies' response to Plaintiff's actions were captured in body-worn camera footage, that, as discussed below, can be considered by this Court on this motion.[1]

A. *During the traffic stop, Plaintiff refused to follow lawful orders and physically resisted Deputy Wong, resulting in Wong taking Plaintiff to the ground.*

On July 8, 2021, at approximately 8:00 p.m., Deputies Jason Wong and Thomas Eckhoff were on patrol in Minneapolis. (*See* Declaration of Sarah McLaren, Ex. 1,[2] Body-Worn Camera Footage of Jason Wong ("Wong BWC") at 20:03:23.[3]) Wong observed that a vehicle had made a lane change without signaling. (*Id.* at 20:04:25-35; Ex. 2, Body-Worn Camera Footage of Thomas Eckhoff ("Eckhoff BWC") at 20:04:22-

---

[1]    As discussed below, this body worn camera footage can be considered by the Court in connection with Defendants' Rule 12(b)(6) motion because the contents of these materials are alleged in the complaint, and Plaintiff has no basis to dispute their authenticity. *See Ching v. City of Minneapolis*, __ F. Supp. 3d __, No. 21-CV-2467 (KMM/DTS), 2022 WL 4364790, at *3 (D. Minn. Sept. 21, 2022); *Marks v. Doe 1*, 528 F. Supp. 3d 1008, 1013 (D. Minn. 2021); *McDonough v. Toles*, 476 F. Supp. 3d 882, 888 (D. Minn. 2020). In addition, in analyzing a complaint's sufficiency, a court need not "adopt the plaintiff's version of the facts if they are blatantly contradicted by video evidence." *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019) (internal quotation marks omitted).

[2]    All exhibits are attached to the Declaration of Sarah McLaren, filed herewith.

[3]    Citations to a specific time in the body-worn camera footage reference the timestamp in the top right corner of the video. Each body worn camera video begins with a 60-second "lookback" period prior the deputy initiating the recording. This 60-second period contains video but not audio. After the deputy initiates the recording, the footage contains both video and audio.

31.[4]) Wong activated the emergency lights of his squad. (Wong BWC at 20:04:35-37.) Eckhoff observed that the vehicle had a passenger. (*Id.* at 20:04:42-44; Eckhoff BWC at 20:04:38-40.) As both deputies began to exit the squad, Eckhoff said that the passenger was "getting out on the right." (Wong BWC at 20:04:44-45; Eckhoff BWC at 20:04:40-41.) Both deputies then exited the squad while ordering both of the vehicle's occupants—Plaintiff and the passenger—to "Stay in the car!" (Wong BWC at 20:04:45-47; Eckhoff BWC at 20:04:41-43.)

As Wong left his squad, Plaintiff was in the process of exiting his vehicle from the driver seat. (Wong BWC at 20:04:47.) As Wong approached Plaintiff, Wong told Plaintiff twice more to "Stay in the car!" (*Id.* at 20:04:47-50.)

Instead of returning inside his vehicle as directed, Plaintiff closed and locked his driver door, stood next to his vehicle, and took an aggressive posture while facing Wong and opening up his sweatshirt. (*Id.* at 20:04:47-52; *see id.* at 20:08:50 – 20:09:00 (showing driver door was locked).) Wong informed the Plaintiff that he should not exit his vehicle during a traffic stop. (*Id.* at 20:04:52-55.) When Wong reached Plaintiff, he turned Plaintiff away from him and placed Plaintiff's right hand on the top of Plaintiff's vehicle while instructing Plaintiff to put his hands on top of the vehicle. (*Id.*) Plaintiff stated that he just finished work and Wong again directed Plaintiff to put his hands on top of the vehicle. (*Id.* at 20:04:55 – 20:05:01.) Wong then instructed Plaintiff not to move.

---

[4]    The time stamp on Eckhoff's body-worn camera appears to be approximately four seconds behind the timestamp on Wong's body-worn camera.

(Wong BWC at 20:05:02-05.) Plaintiff became more agitated, yelling repeatedly that he just finished work and that deputies had been seeing him all day. (*Id.* at 20:05:06-13.)

As Plaintiff's behavior escalated, Wong instructed Plaintiff a second time not to move. (*Id.* at 20:05:08.) As Plaintiff continued to yell and struggle, Wong told Plaintiff to give Wong his hand (so that Plaintiff could be handcuffed) or Plaintiff would be taken to the ground. (*Id.* at 20:05:13-19.) Plaintiff's resistance continued, and Wong warned Plaintiff a second time that he would be taken to the ground if he did not comply with being handcuffed. (*Id.* at 20:05:19-21.) Wong also ordered Plaintiff to stop resisting. (*Id.* at 20:05:21-23.) Plaintiff responded by yelling that he was not resisting. (*Id.* at 20:05:25-27.) Plaintiff also continued to yell that he just finished work. (*Id.* at 20:05:31-32.) At this time, Wong was attempting to walk Plaintiff back to his squad car while Plaintiff continued to yell and struggle. (*Id.* at 20:05:21-35.) Once at the squad car, Plaintiff's yelling and struggling continued, so Wong took Plaintiff to the ground. (*Id.* at 20:05:36-45.)

As Wong was dealing with Plaintiff, Eckhoff was on the opposite side of Plaintiff's vehicle with the passenger. (Eckhoff BWC at 20:04:45 – 20:05:05.) Unlike Plaintiff, the passenger listened to the deputies' orders to stay in the vehicle. (*Id.*) The passenger also complied with Eckhoff's subsequent instruction to step out of the vehicle and cooperated as Eckhoff handcuffed him while Plaintiff yelled in the background. (*Id.* at 20:05:02-21.) Eckhoff explained to the passenger that he was not under arrest, but that he was being temporarily detained and handcuffed for officer safety. (*Id.*) As Eckhoff spoke with the passenger, Wong escorted Plaintiff back to the driver's side of the squad

car. (Eckhoff BWC at 20:05:25-29.) As Wong took Plaintiff to the ground, Eckhoff told

the passenger to remain where he was and Eckhoff ran to the squad to assist Wong. (*Id.* at

20:05:40-43.)

> B. *On the ground, Plaintiff continued to physically resist Wong and other deputies until he was handcuffed.*

When Eckhoff reached Wong, Plaintiff was on his hands and knees and was

struggling to get Wong off of his back. (*Id.* at 20:05:43-44.) Eckhoff directed Plaintiff to

put his hands behind his back. (*Id.* at 20:05:47-49; Wong BWC at 20:05:51-53.) Plaintiff

did not comply with this command but continued to yell and struggle with both deputies

as he tried to get free. (Wong BWC at 20:05:54 – 20:06:04; Eckhoff BWC at 20:05:50 –

20:06:00.)

Other deputies soon arrived and provided assistance. Deputy Joshua Wood took

control of Plaintiff's legs. (Eckhoff BWC at 20:06:01-13; Ex. 3, Body-Worn Camera

Footage of Joshua Wood ("Wood BWC") at 20:06:01-13.[5]) At Wong's request, Deputy

Reed Hendrickson took hold of Plaintiff's right arm and attempted to place it behind

Plaintiff's back. (Wong BWC at 20:06:10-21; Ex. 4, Body-Worn Camera Footage of

Reed Hendrickson ("Hendrickson BWC") at 20:06:10-22.[6]) Plaintiff continued to attempt

---

[5]      The time stamp on Wood's body-worn camera appears to match that on Eckhoff's body-worn camera and is approximately four seconds behind the timestamp on Wong's body-worn camera.

[6]      The time stamp on Hendrickson's body-worn camera appears to match that on Wong's body-worn camera and is approximately four seconds ahead of the timestamp on Eckhoff's and Wood's body-worn cameras.

to push himself up off of the pavement while Wong was on his back. (Wong BWC at 20:06:10-21; Hendrickson BWC at 20:06:10-21.)

Wong informed the deputies that there was a gun on scene because a "mag"—a magazine of ammunition—had fallen out of Plaintiff's pants. (Wong BWC at 20:06:17-19; Eckhoff BWC at 20:06:13-15; Wood BWC at 20:06:13-15; Hendrickson BWC at 20:06:17-19.) Plaintiff immediately responded that the magazine was not his but instead belonged to Wong. (Wong BWC at 20:06:19-24; Eckhoff BWC at 20:06:15-20; Wood BWC at 20:06:15-20; Hendrickson BWC at 20:06:19-24.) As Plaintiff stated this, he pulled his arm away from Hendrickson and placed it back on the pavement in front of him. (Wong BWC at 20:06:20-22; Hendrickson BWC at 20:06:20-22.) As Plaintiff yelled and struggled, Wood commanded him to "stop fighting!" (Eckhoff BWC at 20:06:19-20; Wood BWC at 20:06:19-20; Hendrickson BWC at 20:06:23-24.) Hendrickson again attempted to place Plaintiff's right arm behind his back while ordering "get your hand behind your back!" (Wong BWC at 20:06:26-27; Eckhoff BWC at 20:06:22-23; Wood BWC at 20:06:22-23; Hendrickson BWC at 20:06:26-27.) Plaintiff responded, "I'm calling my family man, f*ck that!" while reaching both hands in front of him toward a phone on the pavement. (Wong BWC at 20:06:27-29; Eckhoff BWC at 20:06:23-25; Wood BWC at 20:06:23-25; Hendrickson BWC at 20:06:27-29.)

As Plaintiff reached forward, Wong pushed the phone away from Plaintiff. (Hendrickson BWC at 20:06:29-30.) Wong then pushed Plaintiff's head down with his left forearm as Plaintiff continued to physically resist being placed in handcuffs. (Wong BWC at 20:06:31-33; Eckhoff BWC at 20:06:27-29; Wood BWC at 20:06:27-29;

Hendrickson BWC at 20:06:31-33.) Plaintiff was again given commands to "Stop

fighting!" (*Id.*) Plaintiff continued to pull his arms away from deputies as he yelled a

phone number and then complained that his face was being scratched by the pavement.

(Wong BWC at 20:06:33-39; Hendrickson BWC at 20:06:33-39.) Plaintiff was given still

more commands to "Stop fighting!" (Wong BWC at 20:06:40-41; Hendrickson BWC at

20:06:40-41.) Plaintiff responded that he was not resisting, even as he continued to pull

his right arm away from Hendrickson. (Wong BWC at 20:06:41-45; Hendrickson BWC

at 20:06:41-45.)

Soon after, Hendrickson was finally able to place Plaintiff's right arm behind

Plaintiff's back. (Wong BWC at 20:06:45-47; Hendrickson BWC at 20:06:45-47.) Wong

then immediately removed his forearm from Plaintiff's head and held Plaintiff's right

wrist behind his back until the deputies were able to successfully handcuff Plaintiff.

(Wong BWC at 20:06:48 – 20:07:08; Eckhoff BWC at 20:06:44 – 20:07:04; Hendrickson

BWC at 20:06:48 – 20:07:08.) By this time, Lieutenant Daniel Koski had also responded

to the scene, and he assisted with holding Plaintiff's left wrist as Plaintiff was placed in

handcuffs. (Ex. 5, Body-Worn Camera Footage of Daniel Koski ("Koski BWC") at

20:06:45 – 20:07:08.[7])

---

[7] The time stamp on Koski's body-worn camera appears to match that on Wong's and
Hendrickson's body-worn cameras and is approximately four seconds ahead of the
timestamp on Eckhoff's and Wood's body-worn cameras.

C. *Once Plaintiff was handcuffed, he was seated in the back of Wong's squad vehicle while deputies searched Plaintiff's vehicle.*

After Plaintiff was handcuffed, the deputies rolled Plaintiff to his side and pat searched him before standing him upright. (Wong BWC at 20:07:08-52; Eckhoff BWC at 20:07:04-48; Wood BWC at 20:07:04-48; Hendrickson BWC at 20:07:08-52; Koski BWC at 20:07:08-52.) Wong looked down at tactical belt (which holds magazines of ammunition) and informed the other deputies that the magazine of ammunition that had fallen to the ground during the struggle was his own. (Wong BWC at 20:07:17-29; Eckhoff BWC at 20:07:13-25.) Deputies walked Plaintiff to Wong's squad and seated him in the backseat. (Koski BWC at 20:07:45-50.) Plaintiff did not complain of any injury. (*Id.*) A scrape from the struggle was visible on Plaintiff's face; a scrape from the struggle was also visible on Wong's hand. (Hendrickson BWC at 20:07:08 (Wong's scraped hand); *Id.* at 20:07:34 (Plaintiff's scraped face).) In addition, Wong spat blood from his mouth shortly after the incident due to a minor injury he received during the struggle with Plaintiff. (Wong BWC at 20:08:12-15.)

After Plaintiff was secured, the deputies proceeded to search his vehicle. Wong noted the presence of "shake" (small pieces of suspected marijuana) and an odor of marijuana. (*Id.* at 20:09:15-20.) Wong also located an open bottle of tequila on the floorboard behind the driver seat. (*Id.* at 20:12:05-21.) Wood located a Walmart bag on the floor of the back passenger side of the vehicle containing a large amount of suspected marijuana. (Wood BWC at 20:12:01 – 20:13:01.) The marijuana was packaged for sale in several small plastic baggies and larger baggies. (*Id.*)

The deputies released Plaintiff's passenger, and Plaintiff yelled from the squad car that the passenger was "snitching." (Koski BWC at 20:29:15-35.) Wong transported Plaintiff to jail to be booked on the charges of felony narcotics and obstructing the legal process with force. (Wong BWC at 20:30:42-59.) Shortly before arriving at jail, Plaintiff complained that his handcuffs were too tight and that his ankle was broken. (*Id.* at 20:35:10-16, 20:36:46-48.) Plaintiff also told Wong and Eckhoff that the passenger was the drug dealer, not him, and that the deputies had arrested the wrong person. (Wong BWC at 20:37:21-32.)

The next day, July 9, 2021, Plaintiff was criminally charged with felony drug possession and gross misdemeanor obstruction of legal process. (Ex. 6, Criminal Complaint, 27-CR-21-12859.) On March 22, 2022, the state dismissed the criminal charges. (Ex. 7, Dismissal, 27-CR-21-12859.)

### D. *Present action.*

The Complaint contains six counts. Counts 1 and 2 claim Fourth Amendment violations of false arrest and excessive force. (Compl., ¶¶ 25-33.) The remaining counts raise tort claims under Minnesota law of false arrest, assault, battery, and malicious prosecution. (*Id.* at ¶¶ 34-47.) In addition to his claimed physical injuries, Plaintiff alleges that he suffered reputational harm,[8] emotional harm, and lost wages. (*Id.* at, ¶¶ 23-24.) Defendants now move to dismiss.

---

[8]    Plaintiff has a prior felony conviction for criminal sexual conduct. *See* Court No. 62-CR-17-1192.

10

## ARGUMENT

### I.    Rule 12 Standard

To survive a motion to dismiss, a pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

A pleading "'that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.'" *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). A court may properly set aside legal conclusions, bare recitations of the elements of a claim, and indeterminate factual allegations. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown —that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotation marks omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotations marks omitted). If a complaint fails to allege enough facts to state a claim for relief that is plausible on its face rather than merely conceivable, the claim must be dismissed. *Twombly*, 550 U.S. at 570.

In addition, a court may consider certain outside materials, such as matters of public record, materials that do not contradict the complaint, and materials that are necessarily embraced by the pleadings under Rule 12. *See generally Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

In analyzing a complaint's sufficiency, a court need not "adopt the plaintiff's version of the facts if they are blatantly contradicted by video evidence." *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019) (internal quotation marks omitted); *see Ching v. City of Minneapolis*, __ F.Supp.3d__, No. 21-CV-2467 (KMM/DTS), 2022 WL 4364790, at *3 (D. Minn. Sept. 21, 2022) ("Where their authenticity and completeness is not in dispute, courts from this district routinely hold that [body-worn camera] videos are 'embraced by the pleadings' and proper to consider on a motion to dismiss—as has the Eighth Circuit."); *Marks v. Doe 1*, 528 F. Supp. 3d 1008, 1013 (D. Minn. 2021) ("Here, the Court has considered the news crew's video footage because the footage is referenced in the Amended Complaint and its authenticity is not disputed."); *McDonough v. Toles*, 476 F. Supp. 3d 882, 888 (D. Minn. 2020) ("In this case, the Court has considered the Bar's security video of the incident, as its contents are described in the complaint, and as its authenticity is not disputed."); *Herron v. E.W. Scripps Co.*, 776 F. App'x 929, 930 n.2 (8th Cir. 2019) ("We may consider the actual video of the segment in analyzing the motion to dismiss because it is necessarily embraced by the complaint.") (internal quotation marks omitted).

II.    **Plaintiff Has Failed to State a Section 1983 Claim Against Defendant Deputies.**

    A.  **Plaintiff cannot plausibly allege that his arrest was unsupported by probable cause, or, at a minimum, arguable probable cause.**

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011) (quoting *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir.2005) (citation omitted)). "An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Id.* (quoting *Fisher v. Wal–Mart Stores, Inc. et al.*, 619 F.3d 811, 816 (8th Cir.2010) (citation omitted)). "Qualified immunity applies if there is even arguable probable cause for arrest." *Branch v. Gorman*, 742 F.3d 1069, 1072 (8th Cir. 2014) (internal quotation marks omitted). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable." *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (internal quotation marks omitted).

"[I]t is well-established that a police officer who observes a traffic violation has probable cause to stop the vehicle and its driver." *United States v. Olivera-Mendez*, 484 F.3d 505, 509 (8th Cir. 2007) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (per curiam)). An officer can use handcuffs during a traffic stop when he has a "reasonable belief that the suspect is armed and dangerous or that the restraints are

necessary for some other legitimate purpose." *Waters*, 921 F.3d at 737 (internal quotation marks omitted). A suspect's refusal to comply with commands, agitated behavior, and argumentative demeanor are factors that permit the use of handcuffs. *See id.* at 738; *United States v. Smith*, 645 F.3d 998, 1002 (8th Cir. 2011) ("police officers may reasonably handcuff a suspect and place him in a squad car during the course of a *Terry* stop in order to protect their safety and maintain the status quo").

In addition, the Eighth Circuit has consistently held that an individual's resistance to an arrest or *Terry* stop—even an invalid one—constitutes independent grounds for arrest. *See United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir. 1995) ("[A]ssuming *arguendo* that [the officer's] initial stop and arrest of Dawdy were invalid, Dawdy's resistance provided independent grounds for his arrest, and the evidence discovered in the subsequent searches of his person and his automobile is admissible."); *United States v. Flores-Lagonas*, 993 F.3d 550, 560 (8th Cir. 2021) (collecting cases); *see also Hill v. Scott*, 349 F.3d 1068, 1074 (8th Cir. 2003) (recognizing that there is no legal right to resist an unlawful search or arrest under Minnesota law).

Here, Wong stopped Plaintiff's vehicle based on his observation that the vehicle had made a lane change without signaling, which is a violation of Minnesota Statutes § 169.19, subds. 4-5 (2020). (Wong BWC at 20:04:25-35; Compl., ¶ 11.) Immediately upon being stopped, Plaintiff ignored Wong's repeated commands to remain in his vehicle, instead exiting the vehicle, locking the door behind him, and facing Wong in an aggressive posture while opening his sweatshirt and arguing with Wong. (Wong BWC at 20:04:45 – 20:05:13.) As Plaintiff continued his agitated and argumentative behavior,

14

Wong attempted to handcuff Plaintiff for officer safety and to maintain the status quo during the traffic stop. (Wong BWC at 20:05:13-45.) Plaintiff physically resisted Wong's and the other deputies' repeated verbal commands and attempts to handcuff him. (*Id.* at 20:05:13 – 20:07:08; Eckhoff BWC at 20:05:43 – 20:07:04; Wood BWC at 20:06:01 – 20:07:04; Hendrickson BWC at 20:06:10 – 20:07:08; Koski BWC at 20:06:45 – 20:07:08.)

At the time of Plaintiff's arrest, therefore, there was probable cause to believe that Plaintiff had committed the offense of obstructing the legal process with force, which is a gross misdemeanor under Minnesota Statutes §§ 609.50, subd. 1(2), 609.50, subd. 2(2). After Plaintiff was handcuffed, the deputies discovered a felony amount of suspected narcotics in Plaintiff's vehicle, in violation of Minnesota Statutes § 152.025, subd. 2(1) (2020). Based on the allegations in the Complaint and the body-worn camera footage, Plaintiff cannot plausibly allege that his arrest was unsupported by probable cause, or, at a minimum, arguable probable cause. *See Borgman*, 646 F.3d at 522–23; *Olivera-Mendez*, 484 F.3d at 509; *Waters*, 921 F.3d at 737-38; *Smith*, 645 F.3d at 1002; *Dawdy*, 46 F.3d at 1431; *Scott*, 349 F.3d at 1074.

**B.  Plaintiff cannot plausibly allege that he was subjected to excessive force.**

To state an excessive force claim under the Fourth Amendment, Plaintiff must show that Defendant Deputies' "use of force was 'objectively unreasonable, given the facts and circumstances of the particular case, as judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Waters*, 921 F.3d at 739 (quoting *Chambers v. Pennycook*, 641 F.3d 898, 905-06 (8th Cir. 2011)).

15

Individual liability for damages in a Section 1983 action is personal, so each defendant's conduct must be independently assessed. *Faulk v. City of St. Louis, Missouri*, 30 F.4th 739, 744 (8th Cir. 2022).

Three factors considered in determining whether an officer used reasonable force are: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and, (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id*. (internal quotation marks and citation omitted).

The calculus for determining whether the use of force is excessive must, under *Graham*, account for the often tense and fluid circumstances in which the force is used. *Id*. at 396-97. Accordingly, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* A court must determine "'whether the totality of the circumstances justifie[s] a particular sort of . . . seizure.'" *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). Law enforcement officers "undoubtedly have a right to use some degree of physical force, or threat thereof, to effect a lawful seizure, and reasonable applications of force may well cause pain or minor injuries with some frequency." *Robinson v. Hawkins*, 937 F.3d 1128, 1136 (8th Cir. 2019) (internal quotation marks omitted). "Handcuffing inevitably involves some use of

16

force and it almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied." *Chambers*, 641 F.3d at 907 (internal quotation marks and citation omitted). Moreover "a claim must be based upon more than 'a de minimis use of force.'" *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1210-11 (8th Cir. 2013) (emphasis omitted) (quoting *Chambers*, 641 F.3d at 906). A lack of physical injuries resulting from a use of force is evidence of the *de minimis* nature of the force used. *Waters*, 921 F.3d at 739-40.

Courts have routinely upheld an officer's use of a takedown maneuver when faced with an uncooperative, resisting individual. *Murphy v. Engelhart*, 933 F.3d 1027, 1029-30 (8th Cir. 2019) (holding trooper was entitled to qualified immunity for takedown of plaintiff that resulted in a broken knee where takedown happened after plaintiff repeatedly refused trooper's verbal commands and plaintiff repeatedly tried to pull her arm from trooper's grasp); *Kelsay v. Ernst*, 933 F.3d 975, 979-80 (8th Cir. 2019) (en banc) (holding that deputy who used a takedown maneuver to arrest a suspect who ignored the deputy's instruction to "get back here" and continued to walk away was entitled to qualified immunity, even though suspect suffered a broken collarbone); *Schoettle v. Jefferson Cnty.*, 788 F.3d 855, 857–60 (8th Cir. 2015) (holding officers' actions in forcibly removing plaintiff from his vehicle and taking plaintiff to the ground was objectively reasonable where plaintiff refused to comply with the officers' orders, repeatedly attempted to evade arrest, and physically struggled against the arresting officers); *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017) (holding that an officer's takedown of a nonviolent misdemeanant who ignored two orders to put his

hands behind his back and continued walking past the officer was objectively reasonable); *see also City of Escondido v. Emmons*, __ U.S. __, 139 S. Ct. 500, 502-04, (2019) (per curiam) (vacating the denial of qualified immunity for an officer who executed a takedown of a man who posed no apparent danger but disobeyed the officer's command not to close an apartment door and then "tried to brush past" the officer); *Smith v. Addy*, 343 F. App'x 806, 808 (3d Cir. 2009) (holding that officer used objectively reasonable force when pepper-spraying plaintiff, and later taking plaintiff to the ground, when plaintiff exited his vehicle during a routine traffic stop, assumed a fighting stance, and physically resisted when told to place his hands on his vehicle).

### 1. *Wong's use of force on Plaintiff was objectively reasonable.*

In light of the above legal principles, Plaintiff cannot sufficiently allege a plausible excessive force claim against Wong. Wong's use of force consisted of walking Plaintiff to his squad, taking Plaintiff to the ground, and pushing Plaintiff's head to the ground with his forearm when he believed that a magazine of ammunition had fallen out of Plaintiff's pants and Plaintiff was defying verbal commands and physically resisting being handcuffed. Notably, the body-worn camera footage does not show Wong (or any deputy) use force on Plaintiff's ankle. In fact, after the scuffle, Plaintiff walks to the squad car without complaint. (Koski BWC at 20:07:45-50.) Wong also did not handcuff Plaintiff. (Eckhoff BWC at 20:06:08 – 20:07:00.) As can be seen from the body worn camera footage, the scrape to Plaintiff's face from the pavement and any injuries to Plaintiff's left wrist from the handcuffs resulted from Plaintiff's struggling against the deputies as he ignored verbal command and physically resisted being handcuffed.

(Eckhoff BWC at 20:06:08 – 20:07:00; Wong BWC at 20:06:31-48; Hendrickson BWC at 20:06:31-48.)

Wong's use of force was objectively reasonable under the totality of the circumstances. Plaintiff's behavior quickly escalated a traffic stop into a violent confrontation. Plaintiff refused numerous lawful commands and physically resisted being handcuffed, even after a magazine of ammunition had fallen to the ground which Wong believed at the time belonged to Plaintiff. Given the totality of the circumstances, Wong's actions in walking Plaintiff to his squad, taking Plaintiff to the ground, and pushing Plaintiff's head to the ground with his forearm when Plaintiff was actively resisting being handcuffed were objectively reasonable. *See Murphy*, 933 F.3d at 1029-30; *Kelsay*, 933 F.3d 979-80; *Schoette*, 788 F.3d at 857–60; *Ehlers*, 846 F.3d at 1011; *Smith*, 343 F. App'x at 808.

## 2. *Hendrickson's use of force on Plaintiff was objectively reasonable.*

Plaintiff likewise cannot establish that Hendrickson's actions toward him constituted excessive force. Hendrickson's use of force was limited to placing Plaintiff's right arm behind Plaintiff's back so that Plaintiff could be handcuffed. (Hendrickson BWC at 20:06:10-47.) Plaintiff does not allege any injury occurred to his right arm. Hendrickson did not touch Plaintiff until Plaintiff was already on the ground with Wong, Eckhoff, and Wood. Even if not, *de minimis*, for all of the reasons stated in Part II.B.1 above, Hendrickson's actions in placing Plaintiff's right arm behind Plaintiff's back so that Plaintiff could be handcuffed were objectively reasonable under the totality of the

circumstances. *See Murphy*, 933 F.3d at 1029-30; *Kelsay*, 933 F.3d at 979-80; *Schoettle*, 788 F.3d at 857–60; *Ehlers*, 846 F.3d at 1011; *Smith*, 343 F. App'x at 808.

   *3. Koski's use of force on Plaintiff was objectively reasonable.*

   Plaintiff similarly cannot establish that Koski's actions toward him constituted excessive force. Koski's use of force was even more limited he simply helped other deputies hold Plaintiff's left wrist as it was handcuffed. (Koski BWC at 20:06:45 – 20:07:08.) Similar to Hendrickson, Koski did not touch Plaintiff until Plaintiff was already on the ground with several other deputies. Even if not *de minimis*, for all of the reasons stated in Part II.B.1 above, Koski's limited use of force was also objectively reasonable under the totality of the circumstances. *See Murphy*, 933 F.3d at 1029-30; *Kelsay*, 933 F.3d at 979-80; *Schoettle*, 788 F.3d at 857–60; *Ehlers*, 846 F.3d at 1011; *Smith*, 343 F. App'x at 808.

   **C.  At a minimum, Defendant Deputies are entitled to qualified immunity.**

   Even if Plaintiff stated a claim for unlawful arrest or excessive force—and, as discussed above, he has not—his claim fails because Defendant Deputies are entitled to qualified immunity as a matter of law. "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, __U.S.__, 138 S. Ct. 577, 589 (2018) (internal quotation marks omitted).

   The conduct of a law enforcement officer violates clearly established law only when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently

clear' that every 'reasonable official would [have understood] that what he is doing

violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v.*

*Creighton*, 483 U.S. 635, 640 (1987)). The Supreme Court has concluded that:

> [c]learly established means that, at the time of the officer's conduct, the law
> was sufficiently clear that every reasonable official would understand that
> what he is doing is unlawful. In other words, existing law must have placed
> the constitutionality of the officer's conduct beyond debate. This
> demanding standard protects all but the plainly incompetent or those who
> knowingly violate the law.

*Wesby*, 138 S. Ct. at 589-590 (internal citations and quotation marks omitted); *see also*

*Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (observing that the qualified immunity

standard "gives ample room for mistaken judgments by protecting all but the plainly

incompetent or those who knowingly violate the law") (internal citation and quotation

marks omitted).

This "accommodation" to protect all but incompetent acts and knowing violations

of the law "exists because officials should not err always on the side of caution because

they fear being sued." *Hunter*, 502 U.S. at 229 (internal quotation marks omitted). The

"clearly established" standard "protects the balance between vindication of constitutional

rights and government officials' effective performance of their duties by ensuring that

officials can reasonably . . . anticipate when their conduct may give rise to liability for

damages." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks

omitted).

"As 'an *immunity from suit* rather than a mere defense to liability . . . [qualified

immunity] is effectively lost if a case is erroneously permitted to go to trial.'" *Faulk*, 30

F.4th at 744 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original)).

As set forth above, Plaintiff's constitutional rights were not violated. Even if Plaintiff could sufficiently allege a violation of his constitutional rights by any of Defendant Deputies, which he cannot, there was no clearly established law that would have alerted Defendant Deputies to the illegality of their conduct. There is no clearly established statutory or constitutional law permitting an individual such as Plaintiff, who exited his vehicle during a routine traffic stop, refused officer commands to get back in his car, and physically resisted lawful orders and officer's attempts to handcuff him, to remain free from being taken to the ground and handcuffed. And the law was not on July 8, 2021, and it is not now, "sufficiently clear" to have placed Defendant Deputies on notice that their actions toward Plaintiff were "unlawful." *See Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (concluding qualified immunity is an affirmative defense that is defeated only if "an official *knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury") (emphasis in original) (internal quotation marks omitted).

Not only is the law not clearly established that Defendant Deputies' actions would rise to the level of a constitutional violation, case law establishes that the Defendant Deputies' conduct was, in fact, both lawful and reasonable. *See Murphy*, 933 F.3d at 1029-30; *Kelsay*, 933 F.3d at 979-80; *Schoettle*, 788 F.3d at 857–60; *Ehlers*, 846 F.3d at

1011; *Emmons*, 139 S. Ct. at 502-04; *Smith*, 343 F. App'x at 808. Plaintiff cannot overcome qualified immunity, and his Section 1983 claim against Defendant Deputies fails for this additional basis.

### III.    Plaintiff's *Monell* Claim Against Hennepin County Fails under Rule 12.

There is no *respondeat superior* liability under Section 1983, and a municipality, like Hennepin County, may not be held liable for a constitutional violation, unless "the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019) (internal quotation marks omitted); *see also City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Even if Plaintiff had plausibly alleged a constitutional violation in this action against an individual Hennepin County employee, which he has not, Plaintiff does not plausibly allege facts sufficient to support a claim for municipal liability against Hennepin County under Section 1983.

### A.    Plaintiff cannot plausibly allege a policy or custom claim under *Monell*.

To sufficiently plead a claim under *Monell*, a plaintiff must plausibly allege specific facts that support the conclusion that Hennepin County had an unconstitutional policy or custom that caused the claimed injury. "[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). A governmental custom may also be the basis for liability, but a plaintiff must prove: (1) the "existence of a continuing, widespread, persistent pattern of

unconstitutional misconduct by the governmental entity's employees"; (2) "[d]eliberate

indifference to or tacit authorization of such conduct by the governmental entity's

policymaking officials after notice to the officials of that misconduct"; and (3) that

plaintiff was injured "by acts pursuant to the governmental entity's custom," *i.e.*, proof

"that the custom was the moving force behind the constitutional violation." *Id.* To prove

an unconstitutional custom, a plaintiff must show that "officials had notice of prior

incidents of police misconduct and had deliberately failed to act on this knowledge."

*Harris v. City of Pagedale*, 821 F.2d 499, 504 (8th Cir. 1987). Prior incidents of

unconstitutional conduct must be factually similar to the incident at issue. *Mettler*, 165

F.3d at 1205.

     Here, Plaintiff alleges no facts that would support his *Monell* claim beyond his

own encounter with Defendant Deputies and a boilerplate recitation of the legal elements.

Courts routinely conclude such threadbare allegations are insufficient to withstand

Rule 12. For example, in *Lollie v. Johnson*, the plaintiff moved to amend his complaint to

add a *Monell* claim based on an alleged municipal custom of failure to discipline police

officers. No. 14-CV-4784 SRN/HB, 2015 WL 3407931, at *1, 5 (D. Minn. May 27,

2015). The proposed amendment alleged that "'repeated, past failures [of the

municipality] to discipline' officers who violated individuals' constitutional rights, served

as the moving force behind [plaintiff's] specific incident." *Id.* at *5 (internal quotation

marks omitted).

     The Court concluded that absent allegations regarding "*specific* prior Internal

Affairs investigations, or *specific* past failures to discipline delinquent officers," the

plaintiff's proposed *Monell* claim could not survive Rule 12. *Id.* (emphasis added). Without such specificity, the plaintiff's proposed *Monell* claim relied only on "conclusory statements and boilerplate language" and failed to sufficiently allege a pattern of unconstitutional misconduct. *Id.* at *6; *see Yang v. City of Minneapolis*, 607 F. Supp. 3d 880, 898 (D. Minn. 2022) (dismissing, on Rule 12, plaintiff's *Monell* claim where plaintiff "alleged no specific facts pertaining to other instances of misconduct to support a custom").

Plaintiff has failed to plausibly allege a *Monell* claim, and Hennepin County is entitled to Rule 12 dismissal.

**B.    Plaintiff cannot plausibly allege a failure to train claim.**

To the extent Plaintiff alleges a failure-to-train-and-supervise claim against Hennepin County under Section 1983 and *City of Canton*, the Complaint is factually insufficient to sustain such a claim. In some "limited" circumstances, a municipality's "decision not to train employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). But to state a claim based on a failure to train and supervise, a plaintiff must plausibly allege: (1) the municipality's training practices were inadequate; (2) the municipality was deliberately indifferent to the rights of others in adopting those training practices such that the failure to train reflects a deliberate or conscious choice by the municipality; and (3) the inadequate training caused the plaintiff's constitutional deprivation. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010).

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (internal quotation marks omitted); *see also Ulrich,* 715 F.3d at 1061 (affirming dismissal of claim where plaintiff alleged inadequate supervision and training practices but supported his claim with only his own arrest and detention). However, the Supreme Court has left open the possibility, "however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a [municipality] could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64.

Here, Plaintiff alleges no facts that support any allegation that Hennepin County violated the Constitution by failing to train and supervise its employees. The Complaint identifies no training or supervision practices that Hennepin County employed or failed to employ, no pattern of similar constitutional violations by untrained or unsupervised employees, and no facts suggesting a patently obvious constitutional violation that was caused by a failure to train or supervise employees.

Plaintiff instead sets forth boilerplate allegations that Hennepin County had a "policy and/or custom" to "inadequately train and supervise its employees." (Compl. ¶ 30.) But general allegations or formalistic recitations of elements are insufficient to meet the *Twombly*/*Iqbal* pleading standard. *See Braden*, 588 F.3d at 594; *Yang*, 607 F. Supp. 3d at 898–99 (dismissing, on Rule 12, *City of Canton* claim where the complaint offered "no specific facts pertaining to prior instances of a failure to train or discipline that would show the City had notice that its training and supervision were inadequate and

likely to result in constitutional violations"). To the extent that Plaintiff brings any of his

Section 1983 claims against Hennepin County under *City of Canton*, they are insufficient

and should be dismissed.

**IV.    Plaintiff Has Not Plausibly Alleged State Law Tort Claims.**

   **A. Defendant Deputies are entitled to official immunity, and Hennepin**
   **County is entitled to vicarious official immunity.**

   "[T]he conduct of police officers in responding to a dispatch or making an arrest

involves precisely the type of discretionary decisions, often split-second and on meager

information, that we intended to protect from judicial second-guessing through the

doctrine of official immunity." *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 665 (Minn.

1999). For discretionary conduct, government officials are entitled to official immunity

unless "guilty of a willful or malicious wrong." *Vassallo ex rel. Brown v. Majeski*, 842

N.W.2d 456, 462 (Minn. 2014) (internal quotation marks omitted); *see also Elwood v.*

*County of Rice*, 423 N.W.2d 671, 677 (Minn. 1988). An official shows malice only by

"intentionally committing an act that the official has reason to believe is legally

prohibited." *Kelly*, 598 N.W.2d at 663. This determination "'contemplates less of a

subjective inquiry into malice . . . and more of an objective inquiry into the legal

reasonableness of an official's actions.'" *Smith v. City of Brooklyn Park*, 757 F.3d 765,

775 (8th Cir. 2014) (quoting *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567,

571 (Minn. 1994)). If an officer's actions are reasonable, he cannot have committed a

malicious wrong and is entitled to official immunity. *See Hassan v. City of Minneapolis*,

489 F.3d 914, 920 (8th Cir. 2007).

Defendant Deputies engaged in discretionary acts when they initiated and responded to a traffic stop and detained and arrested Plaintiff. In light of the body-worn camera footage, Plaintiff cannot plausibly allege that Defendant Deputies acted with malice. *See Reuter v. City of New Hope*, 449 N.W.2d 745, 751 (Minn. Ct. App. 1990), *review denied* (Minn. Feb. 28, 1990) (requiring "specific facts evidencing bad faith" rather than "bare allegations of malice"). Moreover, there is no malice without a constitutional violation. *Schneider v. City of Minneapolis*, No. 03CV03510 (JMR/FLN), 2006 WL 1851128, at *7-8 (D. Minn. June 30, 2006). As a result, Defendant Deputies are entitled to official immunity, barring Plaintiff's state law tort claims. *See Hayek v. City of St. Paul*, No. CIV 05-867 DWF/AJB, 2006 WL 2883155, at *7 (D. Minn. Oct. 6, 2006), *aff'd*, 488 F.3d 1049, 1054-55 (8th Cir. 2007).

"Generally, if a public official is found to be immune from suit on a particular issue, his or her government employer will be vicariously immune from a suit arising from the employee's conduct and claims against the employer are dismissed . . . ." *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 663-64 (Minn. 2004); *see also Pletan v. Gaines*, 494 N.W.2d 38, 42 (Minn. 1992). Because Defendant Deputies are entitled to official immunity, vicarious official immunity protects Hennepin County from liability.

**B. Even in the absence of official immunity, Plaintiff cannot plausibly allege a state law tort claim.**

*1.    Plaintiff cannot plausibly allege false arrest or malicious prosecution.*

There can be no unlawful detention where probable cause existed to make an arrest. *Johnson v. Morris*, 453 N.W.2d 31, 36 (Minn. 1990). Similarly, a malicious prosecution claim requires a lack of probable cause. *Kushner v. Buhta*, No. 16-CV-2646 (SRN/SER), 2018 WL 1866033, at *17 (D. Minn. Apr. 18, 2018), *aff'd*, 771 F. App'x 714 (8th Cir. 2019) (citing *Young v. Klass*, 776 F. Supp. 2d 916, 922 (D. Minn. 2011) (citing *Cox v. Lauritsen*, 147 N.W. 1093, 1094 (Minn. 1914)). As discussed above, plaintiff cannot plausibly allege a lack of probable cause for his arrest. Therefore his false arrest and malicious prosecution claims fail under Rule 12.

*2.    Plaintiff cannot plausibly allege an assault or battery.*

In Minnesota, "assault is an *unlawful* threat to do bodily harm to another with present ability to carry the threat into effect." *Dahlin v. Fraser*, 288 N.W. 851, 852 (Minn. 1939) (emphasis added). Battery is an intentional, unpermitted offensive contact with another. *Johnson*, 453 N.W.2d at 40. Minnesota law permits officers to use, or threaten to use, reasonable force when executing their lawful duties. *See id.* at 40-41; Minn. Stat. § 609.06 (2020). Therefore, the force an officer uses or threatens must be excessive to constitute a tort. *See Johnson v. Peterson*, 358 N.W.2d 484, 485 (Minn. Ct. App. 1984). Because, as discussed above, Plaintiff has not plausibly alleged that Defendant Deputies used or threatened to use excessive force, Plaintiff's assault and battery claims must be dismissed.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss in its entirety.

Respectfully submitted,

MARY F. MORIARTY
Hennepin County Attorney

Dated: June 7, 2023          By:  _s/ Sarah McLaren_
                                 SARAH McLAREN (#0345878)
                                 Assistant County Attorney
                                 2000A Government Center, MC200
                                 300 South Sixth Street
                                 Minneapolis, MN 55487
                                 Telephone: (612) 348-5532
                                 Sarah.McLaren@hennepin.us

                                 _Attorneys for Defendants_