UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TYREESE M. MCKAY, | Case No. 23-CV-0997 (PJS/DJF) |
| Plaintiff, | |
| v. | ORDER |
| HENNEPIN COUNTY; and JASON WONG, DANIEL KOSKI, and REED HENDRICKSON, Sheriff's Deputies, in their individual and official capacities, | |
| Defendants. | |

Paul J. Bosman, for plaintiff.

Sarah C. S. McLaren, HENNEPIN COUNTY ATTORNEY'S OFFICE, for defendants.

This case arises from a 2021 traffic stop in which plaintiff Tyreese McKay was pulled over for changing lanes without signaling. Compl. ¶¶ 10–12, ECF No. 1. McKay alleges that, during the stop, various Hennepin County Sheriff's deputies threw him to the ground; jumped on his back, ribs, and leg; and handcuffed him too tightly. Compl. ¶¶ 14–15, 17. As a result, McKay alleges, he suffered a fractured ankle and lacerations on his wrists and face. Compl. ¶¶ 16–17, 23. After McKay was arrested and placed in the back of a squad car, deputies searched McKay's vehicle and discovered a substantial quantity of marijuana. Compl. ¶ 18. McKay was charged with felony possession of marijuana and misdemeanor obstructing legal process; both charges were later dropped

by the prosecutor.  Compl. ¶¶ 19, 21.  McKay then sued defendants, bringing several federal and state causes of action.  The matter is before the Court on defendants' motion to dismiss.

### A. Standard of Review

To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  In ruling on a motion to dismiss, the Court may consider only the pleadings and "materials necessarily embraced by the pleadings."  *Ching v. City of Minneapolis*, 73 F.4th 617, 620–21 (8th Cir. 2023) (citing *LeMay v. Mays*, 18 F.4th 283, 289 (8th Cir. 2021)).  In support of their motion to dismiss, defendants have submitted five body-cam videos of the incident, and McKay does not contest the authenticity of those videos.  McLaren Decl., ECF No. 12.  The videos may therefore be considered by the Court in ruling on the motion to dismiss.  *Ching*, 73 F.4th at 621 (citing *LeMay*, 18 F.4th at 289) ("Videos of an incident are necessarily embraced by the pleadings . . . .").

*B. Analysis*

McKay seeks to recover for several alleged violations of his Fourth Amendment rights:

First, McKay alleges that Deputy Jason Wong used excessive force when, "as [McKay] began to return to his vehicle, the Deputy grabbed and shoved him, knocking him to the ground." Compl. ¶ 14. "To show excessive force, a plaintiff 'must demonstrate a seizure occurred and the seizure was unreasonable.'" *Cravener v. Shuster*, 885 F.3d 1135, 1138 (8th Cir. 2018) (citations omitted). The videos make clear that this specific claim *as pleaded* is meritless. The videos show that McKay was not taken to the ground as he "began to return to his vehicle." Compl. ¶ 14. Rather, he was taken to the ground after being escorted by Deputy Wong to his squad car, which was roughly 20 feet away from McKay's car. ECF No. 12-1 at 01:57–02:20; ECF No. 12-2 at 02:03–02:23. The timing matters, as the circumstances changed during the minute or so between the initial stop of McKay's car and McKay being taken down near the squad car. ECF No. 12-1 at 01:21–02:19. In short, the complaint alleges a takedown that did not occur (a takedown near McKay's car), and says nothing about the takedown that did occur (the takedown near the squad car). Moreover, the videos do not shed much light on the circumstances of the takedown that did occur. Thus, the Court will dismiss with prejudice the excessive-force claim that was pleaded. McKay may, however, seek

leave to amend his complaint to bring a claim about the takedown that actually occurred.

Second, McKay claims that the deputies used excessive force once he was on the ground by "jumping on his back and ribs and another jumping on his leg." Compl. ¶¶ 15–16. The complaint says almost nothing else about this alleged use of force; in particular, the complaint does not plead facts establishing that this alleged use of force was *excessive*. The videos do not clearly depict everything that happened while McKay was on the ground, but they do show McKay defying the deputies' instructions and physically resisting their efforts to handcuff him. ECF No. 12-1 at 02:52–03:19. Such resistance justified the use of *some* force to effect McKay's arrest, and none of the force depicted on the videos appears to be excessive. *See Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017) (finding no excessive force in the use of a taser where "officers at the scene reasonably could have interpreted Ehlers's behavior of continuing to lay on his hands and refusing to comply with instructions as resistance"). In short, the complaint fails to plead a plausible excessive-force claim with respect to the force applied to McKay after the takedown. Accordingly, that claim is dismissed without prejudice.

Third, McKay alleges that he "was handcuffed tightly" and cut in the process. Compl. ¶ 17. Again, though, the complaint says almost nothing with respect to this

claim; in particular, it does not allege facts that plausibly establish that any deputy used excessive force in handcuffing McKay. The fact that McKay was cut by the handcuffs—particularly in light of the physical resistance shown on the videos—does not in itself make his excessive-force claim plausible. *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011) ("The degree of injury should not be dispositive, because the nature of the force applied cannot be correlated perfectly with the type of injury inflicted."). Moreover, the complaint does not allege, and the video does not show, that McKay informed the deputies that the handcuffs were too tight. *See Howard v. Kansas City Police Dept.*, 570 F.3d 984, 991 (8th Cir. 2009) (collecting cases finding excessive force where officers unreasonably failed to respond to complaints that handcuffs were too tight). The complaint thus contains insufficient factual allegations to make plausible McKay's claim that the deputies used excessive force in handcuffing him. That claim is dismissed without prejudice.

Fourth, McKay alleges that the defendants violated the Fourth Amendment by seizing him "without probable cause or legal justification." Compl. ¶ 26. A traffic stop constitutes a seizure under the Fourth Amendment, but "any traffic violation, no matter how minor, is sufficient to provide an officer with probable cause" justifying such a seizure. *United States v. Gonzalez-Carmona*, 35 F.4th 636, 640 (8th Cir. 2022) (citations omitted). McKay does not dispute that the deputies witnessed him committing a traffic

violation.  Therefore, the deputies had probable cause to seize him.  Similarly, the videos make clear that McKay physically resisted the deputies' efforts to arrest and handcuff him, giving them probable cause to arrest him for obstruction.  *See United States v. Castleman*, 795 F.3d 904, 913 (8th Cir. 2015) ("[A] warrantless arrest satisfies the Constitution so long as the officer has probable cause to believe that the suspect has committed or is committing an offense." (citation omitted)).  In short, the videos make clear that McKay's false-arrest claims are meritless, and thus those claims are dismissed with prejudice.

Finally, although McKay's complaint alleges that the deputies searched his car after his arrest, Compl. ¶ 18, the complaint does not allege that the search was unlawful.  McKay made that claim for the first time in his response brief.  ECF No. 21 at 13–14.  The claim is therefore not properly before the Court.  That said, based on its review of the videos, the Court suspects that the search may indeed have been unlawful.  It does not appear to the Court that the search was conducted incident to arrest, *see United States v. Stegall*, 850 F.3d 981, 984 (8th Cir. 2017) ("[O]fficers may search a vehicle incident to an arrest only if (1) the arrestee is unrestrained and within reaching distance of the passenger compartment when the search begins or (2) it is reasonable to believe the vehicle contains evidence of the offense of arrest." (cleaned up)), or that the search was an inventory search, *see United States v. Kennedy*, 427 F.3d 1136, 1143–44 (8th Cir.

2005) (inventory-search exception requires following a standardized impound and inventory-search policy).  If McKay wishes to pursue an unlawful-search claim, he may seek leave to amend his complaint.

Finally, McKay's complaint asserts several claims under state law.  Those claims are also dismissed without prejudice, as the sparse factual allegations in the complaint do not permit the Court to find that those state-law claims are plausible.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendants' motion to dismiss [ECF No. 9] is GRANTED as follows:

1. The takedown and false-arrest claims asserted in Count 1 of the complaint [ECF No. 1] are DISMISSED WITH PREJUDICE AND ON THE MERITS.

2. All other claims are DISMISSED WITHOUT PREJUDICE.  The Court will, however, not enter judgment before February 9, 2024, to allow McKay time to move to amend his complaint.  Should he file such a motion, the Court will not enter judgment until that motion has been decided.

Dated:  January 16, 2024

_____
Patrick J. Schiltz, Chief Judge
United States District Court